IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

DWIGHT BROWN                                                                                          PLAINTIFF

V.                                                                         CIVIL ACTION NO.3:04CV189-B-D

WACKENHUT/GEO, et al                                                                           DEFENDANTS

REPORT AND RECOMMENDATION

The defendants have filed a motion for summary judgment. The plaintiff has responded. The plaintiff has complained that his medical tennis shoes were confiscated in a shakedown on January 16, 2004 and that his efforts to get the shoes returned were not successful. He was without the medical tennis shoes until April 14, 2004, when a new pair of medical shoes were provided to him.

Brown is a diabetic. He was given medical tennis shoes by GEO's medical staff. The medical tennis shoes are like the standard tennis shoes issued to all inmates with added insoles which provide additional cushioning and arch support. Because diabetics are prone to peripheral neuropathy and may develop a loss of sensation, the shoes were given to Brown as a precautionary measure to provide additional protection for his feet. Brown did not have peripheral neuropathy before the seizure of his shoes. He did not have peripheral neuropathy or loss of sensation in his feet, when examined after being provided with new medical tennis shoes.

Brown was housed in Area C-3, a barracks style area with bunk beds. The beds have drawers welded to them for storing inmates personal possession. There is a diagram posted in the area which shows the inmates where they are supposed to place their possessions. On the day of the shakedown, the inmates were removed from the area, while it was searched. Brown's shoes were found in a ceiling vent. This is a common area which can only be accessed by stacking chairs. It is

not surprisingly against policy for inmates to place anything in the ventilation system. They were seized as contraband, apparently by a Major Lois Brown, a non-party.

The facility rules provide that when contraband is seized from an inmate, they are given a receipt for the property. Where, as in the case of Brown's shoes, they are seized from a common area, and cannot be identified, no receipt is given. There are two types of contraband. One is excess numbers of allowed items. The other type is items not allowed under the rules. If it is excess contraband, like tennis shoes, the item will be confiscated and returned to the warehouse. It will be cleaned and reissued, if in usable condition. It appears from the record that GEO and the defendants were not able to track the shoes to determine what had become of them. If the normal procedures had been followed, the shoes should have been located. Brown claims that he saw another inmate with his shoes on after the seizure.

Brown's complaint liberally construed appears to be that he was denied due process of law in the seizure of his shoes, asserting that he was not given an opportunity to be heard in opposition. The complaint asserts that he has suffered great physical pain as a result of the ninety day deprivation of the use of the medical tennis shoes. He claims that he was deprived of needed medical care, by the time between the taking of the shoes at the shakedown and their replacement. Brown's violation of policy is the undisputed cause of the confiscation of his medical shoes. While Brown claims the deprivation caused him excruciating pain, he did not have his medical shoes on at the time of the shakedown. The affidavit by Heather Ray, RN show that medical examination of the Brown indicates that he has not suffered any deterioration in his condition or any injury as a result of the delay in getting new medical shoes to him.

The defendant Isen would have had possession of the medical shoes if they had been taken directly from Brown. The undisputed facts however show that Isen was not involved in the search of Brown's barracks and that he was never in possession of Brown's shoes. Brown inquired about getting the shoes back from Isen and Isen admits that he was a logical person to ask. Isen's affidavit, which is uncontradicted, states that he investigated the matter and was unable to determine what happened to Brown's shoes after they were confiscated. Isen has no personal involvement in either the seizure of the shoes, nor in any alleged failure to provide care to Brown. Brown, in response, complains that he asked Isen for the shoes and did not get them back. Isen tried without success to locate Brown's shoes, with the apparent intent of returning them to him. That his attempts were unsuccessful do not even raise a material issue on simple negligence, much less meet the type of proof required in § 1983 actions. On the record before the court Isen is entitled to judgment of dismissal as a matter of law.

Defendant Allemand was sued by Brown because he was the chief in charge the day of the shakedown and answered Brown's grievance. Brown has not presented any proof that Allemand was involved in the seizure of the shoes, ever had possession of the shoes, or any personal involvement in Brown's medical care of the alleged failure to provide medical care to Brown. Brown's response is that he asked Allemand for the shoes back and that he did not get them back. Like Isen, there is a failure of proof of necessary to take the case to trial. Allemand is entitled to a judgment of dismissal as a matter of law.

Defendant Jenkins is the warden. He was not involved in the shakedown, the seizure of the shoes, or any alleged resulting denial of medical care. His affidavit sets out that the policy of the prison, if followed, would not allow any inmate's property to be placed where it might be stolen by

another inmate, as Brown suggests happened. Given that policies were in place to safeguard the property of inmates, Jenkins is not liable for the breakdown in procedure that led to Brown's shoes going missing. He is entitled to judgment of dismissal as a matter of law.

GEO has no vicarious liability for the actions of its employees in a §1983 cause of action, under a respondeat superior theory of liability. *Monell v. Department of Social Services*, 436 U.S. 658 (1978). GEO can only be liable if it does not set adequate policies. GEO has wide discretion in setting policies related to shakedowns, which are vital to the security of the prison. It is well-settled that the courts, unless presented with patently unreasonable conduct, are reluctant to interfere with the day-to-day operations of a prison. Bell v. Wolfish, 441 U.S. 520 (1979). A prison's internal security is peculiarly a matter normally left to the discretion of prison administrators. Rhodes v. Chapman, 452 U.S. 337, 349 n.14 (1981). Moreover, "prison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Whitley v. Albers, 475 U.S. 312, 321-22 (1986) (quoting Bell v. Wolfish, 441 U.S. at 547). Here, Brown does not rebut the defendant's assertion that his shoes, after an appropriate seizure could not be located. His shoes were not returned to him, not because of the policies of GEO and the warden, but because of a breakdown in procedures. Notwithstanding the breakdown, when investigation did not locate the shoes, replacement shoes were provided to Brown approximately 90 days after the shakedown. Brown has failed to present evidence to support his claim against GEO. It is also entitled to judgment of dismissal as a matter of law.

The undersigned recommends that the motion for summary judgment by all defendants be granted and the plaintiff's complaint be dismissed with prejudice .

4

The parties are referred to 28 U.S.C. 636(b)(1) and Local Rule 72.2(D) for the appropriate procedure in the event any party desires to file objections to these findings and recommendations. Objections are required to be in writing and must be filed within ten days of this date. Failure to file written objections to the proposed finding and recommendations contained in this report within ten days from the date of filing will bar an aggrieved party from challenging on appeal both the proposed factual findings and the proposed legal conclusions accepted by the district court *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Petitioner is directed to acknowledge receipt of this report and recommendation by signing the enclosed acknowledgment form and returning it to the court within ten days of this date. Petitioner is warned that failure to comply with the requirements of this paragraph may lead to the dismissal of this lawsuit under F.R.Civ.P. 41(b) for failure to prosecute and for failure to comply with an order of the court.

This the 14th day of September, 2005.

/s/ JERRY A. DAVIS
UNITED STATES MAGISTRATE JUDGE